UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIC EDMISTON, individually and as
guardian of A. E., a minor,

                              Plaintiff,

        v.

CITY OF PORT ANGELES, et al.,

                              Defendants.

CASE NO. C18-5009 BHS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, SUA
SPONTE DISMSSING THE STATE
LAW CLAIMS WITHOUT
PREJUDICE, AND CLOSING THE
CASE

This matter comes before the Court on Defendants City of Port Angeles ("City") and Officer Allen Brusseau's ("Officer Brusseau") (collectively "Defendants") motion for summary judgment (Dkt. 11). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I.    PROCEDURAL HISTORY

On January 1, 2018, Plaintiff Eric Edmiston, individually and on behalf of his minor son A. E., ("Edmiston") filed a complaint against Defendants. Dkt. 1. Edmiston's allegations arose after he was bit by K-9 "Bogey," a police dog owned by the City and partnered with Officer Brusseau, an employee of the Port Angeles Police Department ("PAPD"). Edmiston asserts claims for unlawful search, seizure, and excessive use of

force under 42 U.S.C. § 1983; violation of due process of law under the Washington Constitution; strict liability under Washington's dog bite statute, RCW Chapter 16.08; and negligence. *Id.*

On June 27, 2018, Defendants moved for summary judgment on all of Edmiston's claims except negligence. Dkt. 11. On July 16, 2018, Edmiston responded. Dkt. 15. On July 20, 2018, Defendants replied. Dkt. 21.

On September 28, 2018, the Court requested supplemental briefing on whether the entry of Officer Brusseau and Bogey onto Edmiston's property constituted a search, whether the search would have been reasonable, and whether Defendants would be entitled to qualified immunity. Dkts. 25, 29. On October 19, 2018, the parties filed supplemental briefs. Dkts. 31, 37. On October 26, 2018, the parties responded. Dkts. 41, 42.

## II.   FACTUAL BACKGROUND

Around 2:00 pm on February 27, 2016, PAPD Officer Bruce Fernie ("Officer Fernie") was dispatched to a report of a stolen vehicle being driven by an unknown suspect. Dkt. 20, Ex. 1. Officer Fernie responded and began pursuing the vehicle. *Id.* When the suspect vehicle made a sudden left turn, Officer Fernie briefly lost sight of the vehicle. When Officer Fernie saw it again, the vehicle was rolling slowly toward the shoulder of the roadway, and the suspect had fled. *Id.* Children nearby alerted Officer Fernie to the direction of the suspect's flight, which was toward the neighborhood where Plaintiff lives. *Id.* In order to track the fleeing suspect, Officer Fernie called for a K-9 unit to respond. *Id.*

Officer Brusseau arrived in response to Officer Fernie's call, along with his K-9 partner, a four-year-old German Shepard named Bogey. Dkt. 12, ¶ 5. Officer Brusseau and Bogey began tracking the suspect from the abandoned vehicle and headed northwest. Dkt. 12, Ex. 2.

A quarter mile away, Edmiston and his twelve-year-old son A. E. sat watching television inside Edmiston's house in a residential neighborhood. Dkt. 18. Edmiston's house has a long, narrow deck running along the north side of his home, which is accessible by outdoor stairs. Dkt. 20, Ex. 2. The deck is located immediately adjacent to the living room where Edmiston and A. E. sat. Dkt. 18, ¶ 7. Around 3:00 pm, Edmiston heard clicking noises on the deck outside. *Id.* Edmiston and A. E. went to the glass door separating the living room from the deck and looked outside. Dkt. 18, ¶¶ 9, 11. There Edmiston saw Bogey, who he alleges was unaccompanied by Officer Brusseau, snarling and trailing a leash lead. *Id.* ¶ 13.

While the length and location of the actions that came next are in dispute, it is undisputed that Bogey bit Edmiston, an innocent man accused of no wrongdoing, on his right thigh. *Id.* ¶ 14. Edmiston contends that Bogey charged into his house through the open door before biting him. *Id.* ¶ 13. With Bogey engaged, Edmiston's leg began to bleed copiously. *Id.* ¶ 21. Edmiston alleges that Officer Brusseau then appeared and ordered Bogey to release Edmiston, but that Bogey ignored Officer Brusseau's commands and continued his attack on Edmiston. *Id.* ¶ 17-18. Edmiston contends that he had to pry Bogey's jaws open himself, in the process sustaining additional injuries to his

hand and fingers. *Id.* ¶ 22. Edmiston estimated that Bogey's attack lasted 30–45 seconds. Dkt. 14, Ex. 1. Edmiston sustained thirty-two puncture wounds to his thigh. Dkt. 18, ¶ 28.

Officer Brusseau declares that he followed Bogey, who was nose down and actively tracking the suspect driver of the stolen vehicle, up the stairs and onto Edmiston's deck. Dkt. 12, Ex. 2, ¶ 8. Officer Brusseau states that Bogey was on a six-foot lead that he (Officer Brusseau) had control over at all times. *Id.* ¶¶ 5–6. As Officer Brusseau moved across Edmiston's deck, he observed Edmiston standing inside, and saw Edmiston begin to open the glass door leading onto the deck. Officer Brusseau declares that he yelled something to the effect of "Police, go back inside!" but Edmiston continued to open the door, partially stepping outside. *Id.* ¶¶ 9–10. Officer Brusseau also declares that as he turned his attention to Edmiston, Bogey slipped past him without his knowledge and bit Edmiston on the leg. *Id.* ¶ 11. Once Officer Brusseau observed that Bogey had bit Edmiston, he reached down and detached Bogey's jaws from Edmiston's thigh as he commanded Bogey to release. *Id.* ¶ 12. Officer Brusseau estimates the encounter lasted 3–5 seconds. *Id.* Officer Brusseau states that once Bogey was removed, Edmiston went inside his house and shut his door, where he remained until medics arrived. *Id.* ¶ 13.

## III.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.      Merits of Summary Judgment**

    **1.      42 U.S.C § 1983**

The factual allegations giving rise to this case are somewhat unique. Edmiston asserts that an accidental dog bite committed by a police canine violated his right to be free of unlawful search and seizure under the Fourth Amendment. Edmiston offers two theories towards establishing a seizure and one towards establishing a search, but devotes much of his briefing discussing the reasonableness of the police intrusion—inapplicable arguments if he fails to establish that a search or seizure occurred. Defendants move for judgment, arguing that Edmiston cannot support a cognizable § 1983 action when, as here, an unintentional tort is committed by someone who happens to be a government actor. Bogey did "seize" upon Edmiston, at least within the meaning of common vernacular, when he bit Edmiston's leg while tracking an unrelated suspect. The issue thus turns on whether that mistaken "seizure" can support Edmiston's § 1983 action under the Fourth Amendment. The Court agrees with Defendants and concludes that it does not.

    **a.      Fourth Amendment Seizure**

"Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (internal citations omitted). This principle distinguishes intentional seizures that support Fourth Amendment claims from unintentional or accidental mistakes that support liability in tort. For example, in *Brower*,

the Court described a hypothetical tort where an unoccupied police car slips a brake and pins a passerby against a wall, then concluded that it would not be a Fourth Amendment violation because, although the passerby was detained, the government had not interfered with the passerby's freedom "*through means intentionally applied.*" *Brower*, 489 U.S. at 596 (emphasis in original). This further illustrates that government action must be intentional to establish a seizure within the meaning of the Fourth Amendment.

Many authorities further note the distinction between "accidental or tortious acts which happen to be committed by a government official and an intentional detention that rises to the level of a constitutional violation." *Campbell v. White*, 916 F.2d 421, 422–23 (7th Cir. 1990) (no seizure when fleeing motorcyclist suspect crashed and then was accidentally hit by a pursuing police car); *see also Apodaca v. Rio Arriba Cty. Sheriff's Dep't*, 905 F.2d 1445, 1446 (10th Cir. 1990) (no seizure when sheriff's deputy accidentally collided with uninvolved motorist while responding to a burglar alarm); *Andrade v. City of Burlingame*, 847 F. Supp. 760, 764 (N.D. Cal. 1994), *aff'd sub nom. Marquez v. Andrade*, 79 F.3d 1153 (9th Cir. 1996) (no seizure when officer mistakenly released K-9 from vehicle and K-9 bit plaintiff, when K-9 was not intentionally applied to plaintiff); *Kerr v. City of West Palm Beach*, 875 F.2d. 1546 (11th Cir. 1989) (seizure when police intentionally used K-9's to apprehend plaintiffs). Relying on the established authorities above, the Court will address each of Edmiston's seizure theories.

Edmiston first argues that he establishes a seizure based on intentional government action, because PAPD and Officer Brusseau intended to deploy Bogey. Dkt. 15, 15–18.

This argument fails because it is unsupported by clearly established law and, if adopted, would swallow the distinction between accidental torts and intentional seizures.

In support of this theory, Edmiston relies on the seminal authority of *Brower*, but this reliance is mistaken. *Brower* involved a fleeing suspect who was killed when police erected a roadblock that the suspect (Brower) collided with. 498 U.S. at 594. In holding that Brower had stated a claim of seizure within the meaning of the Fourth Amendment, the Supreme Court reasoned that: (1) the police intentionally staged a roadblock for the purpose of stopping Brower; and (2) Brower was stopped by the very instrumentality (the roadblock) that had been placed to stop him. *Id.* at 598–599. Edmiston uses *Brower* to argue that because PAPD intended to use Bogey and because Edmiston was stopped by the very instrumentality (Bogey) that PAPD used, a seizure is established. But Edmiston's argument ignores the *Brower* court's key distinction between intentional actions and accidental mistakes—i.e., that the police in *Brower* acted with intent, both in pursuing Brower as a suspect, and in deploying the roadblock means that ultimately stopped him.

It is undisputed that Officer Brusseau deployed Bogey, and this deployment was intentional. Dkts. 12, 20. Officer Brusseau, however, did not deploy Bogey with an intent to seize Edmiston, but rather to pursue a suspect driver of a stolen vehicle. While Edmiston was harmed by the precise means PAPD deployed, the distinction here turns not on the means used, but whether PAPD intentionally used Bogey *to detain Edmiston*.[1]

---

[1] Consider a hypothetical based on the *Brower* facts. Say that instead of Brower, an innocent third party happened to drive into the roadblock setup by police. Although the third

The entirety of the evidence submitted by Edmiston and taken in the light most favorable to him plainly demonstrates the unintentional nature of his detention. A conclusion that Edmiston establishes a seizure simply because PAPD intended to use Bogey at all would eliminate any meaningful distinction between intentional and unintentional government action, which is clearly contrary to the authority in this area of law. Accordingly, Edmiston fails to establish that he was subject to an intentional Fourth Amendment seizure under the theory that PAPD and Officer Brusseau intentionally deployed Bogey.

Edmiston next attempts to establish an intentional seizure by arguing that he was mistakenly subjected to police detention, relying on the principle that a Fourth Amendment seizure occurs even when police subject an unintended person to their detention. Dkt. 15, 17–19.

It is true that an officer's intentional seizure of the wrong (unintended) suspect is a fact pattern squarely within the Fourth Amendment, *Hill v. California*, 401 U.S. 797, 802–805 (1971), while an officer's unintentional injury to an innocent bystander while in pursuit of a suspect is not, *Apodaca*, 905 F.2d at 1446. Under these principles, Edmiston's second theory of seizure also fails because he again ignores the requirement of intentional government action. Certainly, Edmiston conflates a police officer's *intentional* detention of an innocent person mistaken for a suspect with an officer's *unintentional or negligent* mistake, like the hypothetical car that slipped its brake, which subjects an innocent party to detention.

---

party was stopped by the same means that the police intentionally erected, under prevailing law the third party would most likely be the victim of a tort, not a constitutional violation.

*Andrade* is particularly instructive as to why Edmiston has not established a seizure. In *Andrade*, an officer traveling with a K-9 partner stopped a vehicle believed to contain a group of criminal suspects. 847 F. Supp. at 762. After the officer detained (seized) the group, the officer's police dog inadvertently escaped from the patrol car, biting two of the suspects. *Id.* In holding that no seizure occurred, the *Andrade* court focused on the officer's intent, reasoning that the officer did not intend to use the dog to subdue the plaintiffs, and did not actually use the dog as a means to effectuate the stop. *Id.* at 765.

Edmiston relies on this reasoning to factually distinguish his position and again argue that because Officer Brusseau intended to use Bogey and because Bogey was the precise instrumentality that subdued Edmiston, a Fourth Amendment seizure occurred. Dkt. 15, 17–19. *Andrade*, however, is easily distinguishable, because it involved an intentional seizure of mistaken suspects and an accidental bite.

Unlike the officer in *Andrade*, it is undisputed that Officer Brusseau never intended to pursue Edmiston. Edmiston, an innocent party, was never the subject of Officer Brusseau's search. And Officer Brusseau never confused Edmiston for the suspect, let alone going so far as to intentionally seize Edmiston on a mistaken belief that Edmiston was actually the suspect fleeing from the stolen vehicle.[2] *See Moore v. Indehar*,

_____

[2] This fact also distinguishes *Rogers v. City of Kennewick*, an Eastern District of Washington case cited by Edmiston involving a K-9 who bit an innocent third party while tracking an unrelated suspect. *Kennewick*, No. CV045028-EFS, WL 2055038 at *1 (E.D. Wash. July 13, 2007). While analogous at first glance, the *Kennewick* officers intentionally beat plaintiff using their knees, fists, and a flashlight, after mistakenly believing him to be the suspect

514 F.3d 756, 760 (8th Cir. 2008) (noting that "bystanders are not seized for Fourth

Amendment purposes when struck by an errant bullet in a shootout" because they were

not the intended object of the seizure, in contrast to a case of mistaken identity). Further,

in comparison to the officer in *Andrade*, Officer Brusseau did not order Bogey to bite

Edmiston or otherwise use Bogey to intentionally inhibit Edmiston's freedom in any way.

Indeed, the facts taken in the light most favorable to Edmiston are devoid of any

reference to action taken by Officer Brusseau that could possibly be construed as

intentional *in regards to Edmiston*. Accordingly, the Court concludes that Edmiston was

not subject to intentional action by PAPD or Officer Brusseau that would support a

seizure under the meaning of the Fourth Amendment.

### b. Fourth Amendment Search

Finding no seizure, the Court next turns to Edmiston's theory of a search. The

Fourth Amendment prohibits officers from entering enclosed curtilage without a warrant

to the same extent that it prohibits them from entering a home. *United States v. Perea–
Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012). Edmiston argues that a search occurred

because Bogey and Officers Brusseau and Fernie came onto the deck attached to his

home and, he alleges, entered his home. Dkt. 15 at 14–15.

As a threshold matter, the Court notes that the search issue is fundamentally

different than the seizure issue. This is because a seizure requires an intentional

acquisition of physical control, while a search occurs when police "physically occup[y]

---

they sought. *Id.* The Ninth Circuit later upheld a jury verdict for plaintiff for unlawful seizure
and excessive use of force. 304 Fed.Appx. 599 (2008).

private property for the purpose of obtaining information." *United States v. Jones*, 565 U.S. 400, 404–405 (2012). Here, it is undisputed that Officer Brusseau and Bogey entered Edmiston's attached deck. Dkt. 42 at 3. Thus, Edmiston establishes that police physically occupied his private property. Edmiston argues that this physical entry alone is a search within the meaning of the Fourth Amendment. Dkt. 41 at 1–3. Defendants, however, focus on the gathering of information—contending that because Officer Brusseau neither investigated Edmiston's home nor sought to gather incriminating evidence as he passed briefly through its curtilage while tracking an unrelated suspect, then no Fourth Amendment search occurred. Dkt. 37 at 5.

Information gathering is key in distinguishing a mere trespass committed by police from a search under the Fourth Amendment. *See, e.g.*, *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (gathering of information inside constitutionally protected area constitutes search); *Jones*, 565 U.S. at 404 (trespassory installation of GPS device to vehicle and use of device to monitor vehicle's movements constitutes search); *Katz v. United States*, 398 U.S. 347 (1967) ("the reach of the Fourth Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure"); *People v. Frederick*, 895 N.W. 2d 541, 545 (Mich. 2017) ("Consistently with *United States v. Jones* . . . the *Jardines* Court required not only a trespass, but also some attempted information-gathering, to find that a search occurred"). Therefore, the question before this Court is whether Officer Brusseau's use of Bogey, who was following the organic materials sloughing off the suspect's body, constituted the gathering of evidence. Dkt. 38, ¶¶ 3–4.

It is not entirely clear to the Court what evidence, if any, Officer Brusseau gathered from Edmiston's curtilage. On the one hand, it could be argued that "skin rafts," organic materials which are shed from the body and waft off a suspect, as well as the ground disturbed by a suspect's footfalls, are evidence. Dkt. 38, ¶ 3. Under this broad definition, Officer Brusseau's use of Bogey, who relied on these signals to track the suspect and lead Officer Brusseau, could constitute information gathering under *Jardines* and *Jones*.

On the other hand, if following a suspect's scent trail across an otherwise unrelated residential property does not constitute the gathering of evidence, then a Fourth Amendment search did not occur. Edmiston appears to concede that Officer Brusseau did not gather evidence by following the suspect's scent trail alone. *See* Dkt. 41 at 6 ("A scent trail, by itself, is not 'evidence.'"). If Edmiston concedes that a scent trail made up of organic materials is not evidence on its own, and so far, there is no controlling precedent before the Court that it is, then Officer Brusseau's use of Bogey to follow a suspect's scent trail across a residential property would not constitute the gathering of evidence. If Officer Brusseau did not gather evidence while he briefly occupied Edmiston's deck, then he did not "search" Edmiston's curtilage under the meaning of the Fourth Amendment.

The Court, however, need not reach the question of the constitutional violation. This is because even if Officer Brusseau and Bogey searched Edmiston's curtilage as they crossed his deck while pursuing an unrelated suspect, Officer Brusseau would be afforded qualified immunity. Although Defendants did not explicitly raise the affirmative

defense of qualified immunity, they implicitly referred to both questions a court must consider in their original briefing, and explicitly argued that it applies in their supplemental briefing. *See* Dkts. 11 at 1, 4, 8; 21 at 2, 6–9; 37 at 10–12; 42 at 6.

Qualified immunity immunizes police officers acting under color of law, as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity allows government officials to make "reasonable but mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotations omitted).

Under the doctrine, the first question is the same as this Court's question regarding the search—whether the officer in fact violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second question is whether the contours of the constitutional right were "sufficiently clear that a reasonable official would [have understood] that what he is doing violates that right." *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may answer these questions in any order. *Pearson*, 555 U.S. at 236.

The Court examines the second question first. Turning to seminal Fourth Amendment case law, neither *Jardines,* where police intentionally gathered evidence inside a suspect's curtilage using a police dog, nor *Jones*, where police installed a GPS device and then used it to gather evidence against the suspect, are directly applicable. *See* 569 U.S. 1; 565 U.S. 400. Indeed, in these cases, like most other Fourth Amendment

authority cited by the parties, the police intentionally intruded into the suspect's

constitutionally protected area while searching for incriminating evidence against the

suspect: information gathering was thus presumed. No such conclusion can be drawn

here, where Bogey, following the suspect's scent trail, directed Officer Brusseau through

Edmiston's neighborhood. Dkt. 12 at 2, 7–8. Despite the lack of controlling precedent,

however, under Edmiston's reasoning Officer Brusseau should have known that using a

police dog to track a person suspected of committing a felony property crime through the

curtilage of an otherwise unrelated residence violates clearly established law. Dkts. 31,

41. Yet, despite the opportunity for supplemental briefing, there is no such law before

this Court. *Id.* Without direct authority, the Court cannot conclude that the right to be free

from the warrantless entry of police and a police dog into one's curtilage—when the dog

is following the scent trail of an unrelated felony suspect through a neighborhood during

the day—was clearly established at the time Officer Brusseau entered Edmiston's deck.

*See Pearson*, 555 U.S. at 243–244 ("An officer conducting a search is entitled to

qualified immunity where clearly established law does not show that the search violated

the Fourth Amendment."). The Court therefore agrees with Defendants that the dearth of

controlling precedent, coupled with the fact that the Court requested supplemental

briefing, demonstrates the legal uncertainty surrounding this factual scenario. Dkt. 37 at

10–12. Thus, even if Officer Brusseau searched Edmiston's curtilage, he is entitled to

qualified immunity.

    While Edmiston argues that the lack of analogous case law on this issue actually

supports his position that a search occurred, he relies on the fundamental Fourth

Amendment protection against government intrusion in the home. Dkt. 41 at 2. The Supreme Court, however, has repeatedly warned courts not to define clearly established law at a high level of generality for purposes of qualified immunity. *See al-Kidd* at 743; *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (per curiam) (summarily reversing Ninth Circuit's denial of qualified immunity to officer and holding that entry into curtilage did not violate clearly established law). Moreover, although the Supreme Court does not require a factually identical case to find that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal citations omitted). As demonstrated here, the question of whether a police officer violates the Fourth Amendment by crossing the curtilage of a residential home, while using a police dog to track a suspect unrelated to the residential home, is highly debatable. The lack of authority further concerns the Court given that the warrantless use of police dogs in residential neighborhoods and across private property is a common factual scenario. Dkt. 38, ¶¶ 6–9. Therefore, in the absence of authority demonstrating that the right was clearly established, Officer Brusseau is entitled to qualified immunity. To hold otherwise may risk subjecting police to § 1983 liability every time an officer using a police dog trespasses in a residential yard.

In sum, Edmiston has failed to establish that a police officer's path across curtilage while pursuing an unrelated suspect is a search under the Fourth Amendment.[3] Moreover,

---

[3] To the extent that Edmiston argues that Bogey's entry into his *home* was a search, the Court concludes that this fails under the intentional/unintentional analysis as described above.

even if an unreasonable search within the meaning of the Fourth Amendment occurred, it was neither a knowing constitutional violation, nor plainly incompetent under current precedent. Thus, even if Officer Brusseau's entry to Edmiston's deck was a warrantless, unreasonable search in violation of the Fourth Amendment, Officer Brusseau is entitled to qualified immunity.

### c.   Excessive Force

Finally, Edmiston makes a claim under the Fourth Amendment for excessive use of force. But here, Edmiston skips over the establishment of a Fourth Amendment violation completely, presuming without citation that the City's deployment of a police canine in a residential neighborhood is an excessive use of force. Dkt. 15, 10–14. Defendants counter that this reasoning would subject PAPD to liability from every homeowner in Edmiston's neighborhood. Dkt. 21 at 6–7.

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a citizen who is not in custody are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Espinosa v. City and Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Thus, the first question to be addressed in analyzing Edmiston's excessive force claim is whether a seizure occurred, not whether the presumed seizure

---

Moreover, the facts taken in the light most favorable to Edmiston indicate that Officers Brusseau and Fernie only entered his home *after* Bogey had bitten his leg and it began to bleed copiously. Dkt. 18, ¶¶ 12–20. If this was indeed a search, it was reasonable under the emergency aid exception to the Fourth Amendment's warrant requirement. *See, e.g.*, *Brigam City, Utah v. Stuart*, 547 U.S. 398 (2006); *Mincey v. Arizona*, 437 U.S. 385, 393–394 (1978).

was reasonable. As discussed above, a seizure requires "an intentional acquisition of physical control." *Brower*, 498 U.S. at 596. Because Officer Brusseau did not intentionally acquire control over Edmiston, no seizure supporting his § 1983 claim occurred, and the excessive force claim should also be dismissed.

In sum, the Court concludes that Edmiston cannot maintain a wrongful seizure claim under the Fourth Amendment based on the unintentional or accidental actions of Officer Brusseau. Nor can Edmiston negate that Officer Brusseau is entitled to qualified immunity on the search issue, if a search indeed occurred, in the absence of clearly established law. Defendants are therefore entitled to judgment as a matter of law on the federal claims.[4]

## C. Remaining State Law Claims for Strict Liability, Negligence, and Constitutional Violations

Defendants also move to dismiss Edmiston's state law claim for strict liability under Washington's dog bite statute, RCW Chapter 16.08. The parties dispute whether Officer Brusseau had control over Bogey's leash lead when he bit Edmiston. *See* Dkts. 12, 18, 20. This factual issue is both genuine and material to the outcome of Edmiston's strict liability claim because it governs the application of state statutory immunity.

Defendants also move to dismiss Edmiston's state constitutional claim for violation of due process of law under Wash. Const. art. I, § 3. Dkt. 15, 23–24. Defendants argue that absent specific enabling legislation, there is no private cause of action in

---

[4] Because the Court finds as a matter of law that no constitutional violation occurred, the Court need not address the issue of the City's municipal liability under *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

Washington for state constitutional violations. Dkt. 11 at 11. Edmiston makes the argument that his due process claim has been augmented by legislation, at least within the context of rights for victims of dog bites and the use of police dogs. Dkt. 15 at 23. Edmiston admits that this argument is novel. *Id.*

Generally, a state court is in a better position to resolve novel issues of state law. Further, a federal court has discretion to decline to exercise supplemental jurisdiction over remaining state law claims when the only federal claims are extinguished. *See* 28 U.S.C. § 1367(c)(3); *Parra v. PacificCare of Arizona, Inc.*, 715 F.3d 1146, 1156 (once the district court dismissed the only federal claim it had jurisdiction over during the early stages of litigation, "it did not abuse its discretion in also dismissing the remaining state claims."). In addition, a district court may decline to exercise supplemental jurisdiction over a state law claim if it is novel or complex. 28 U.S.C. § 1367(c)(1). Because the Court has dismissed all of the federal claims and given the nature of the remaining state law tort claims and unusual nature of the constitutional due process claim, the Court finds that all of Edmiston's state law claims would be better adjudicated in a state forum.

Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims and, given that they were originally filed in this court, *sua sponte* dismisses them without prejudice.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment, Dkt. 11, is **GRANTED**. The federal claims are dismissed with prejudice and the state law claims are dismissed without prejudice. The Clerk shall enter **JUDGMENT**

in favor of Defendants on the federal claims, terminate as moot the pending motions to continue trial, Dkt. 39, to strike Edmiston's experts, Dkt. 42, and to compel Edmiston to submit to a mental examination, Dkt. 54, and close the case.

Dated this 21st day of December, 2018.

BENJAMIN H. SETTLE
United States District Judge